### MILES et al. v. UNITED STATES.

#### (Circuit Court, N. D. Georgia. February 19, 1902.)

#### No. 1,603.

UNITED STATES—BUILDING CONTRACT—CONSTRUCTION—EXTRA COMPENSATION.

> An original bid was made by plaintiffs for the construction of a court house and post office building for the United States out of stone, brick, and terra cotta for a certain sum, and afterwards an alternative bid for the construction of the same building out of marble for a greater amount. In the specifications for the building originally submitted, provision was made for certain iron beams and girders to go over openings for doors and windows in order to strengthen the building. The specifications for the alternative bid recited that the work must be performed in strict compliance with drawings to be furnished, "including all necessary changes on account of said proposed construction." *Held*, that the provision quoted was for the benefit of the government, and that, though the evidence tended to show that iron beams were not usually required in marble buildings, the government had the right to require their use, and was not liable for extra compensation.

Suit for Extra Work and Material Furnished for the Savannah Court House and Post Office Building at Savannah, Ga.

Frazer & Hynds and Dorsey, Brewster & Howell, for plaintiffs.

Geo. L. Bell, Asst. U. S. Dist. Atty.

NEWMAN, District Judge. This is a suit brought by the plaintiffs against the United States to recover the value of certain materials furnished and certain work done in the construction of the United States court house and post office building at Savannah, Ga., which they say was not provided for or embraced in the contract they made with the government. The bid made by the plaintiffs on August 22, 1895, for the construction of the court house and post office as originally planned, which was a stone, brick, and terra cotta building, was accepted, and a contract entered into on August 26, 1895, by which the government agreed to pay the plaintiffs $117,000 for the building as then planned. An alternative bid was then made for the same building constructed of marble for $215,000. The construction of the building with the first story of stone and the other stories of brick and terra cotta was commenced. At the instance of the citizens of Savannah, the work was suspended, after it had been commenced, in

order that an appropriation might be obtained from congress sufficient to justify the construction of the building of marble. A satisfactory appropriation was obtained, and on October 18, 1895, a contract was entered into between the plaintiffs and the government for the construction of the building of marble for $209,000. In the specifications for the building originally submitted, when it was to have been constructed of stone, brick, and terra cotta, provision was made for certain iron beams or girders to go over the openings for doors and windows in the building, the purpose being to support and strengthen the walls, and avoid any weakness caused by such openings. The specifications for the alternative bid for constructing the building of marble, so far as material here, are as follows:

"Detail drawings, showing in full the construction, will be furnished the successful bidder, and the work must be performed in strict accordance therewith, including all necessary changes on account of said proposed substitution."

After the marble construction had been commenced, when informed that these iron beams would still be required, the contractors entered into correspondence with the supervising architect's office, claiming that, inasmuch as the building was being constructed of marble, these beams and girders were not at all necessary, and that, as it involved a considerable additional expense to them, they should not be required to put them in. Considerable data was furnished by the contractors to the government officials going to show the strength of a marble building, and that these beams or girders over openings were not usual in a marble building, and were not in any way necessary to support the building. The reply of the government officials substantially was that the beams or girders did not give the building, even when constructed of marble, a factor of safety above that which the government required. On the trial here evidence was introduced by both parties. Both Mr. Miles and Mr. Bradt, who have had large experience in the construction of buildings, testified as witnesses. They also had the evidence of several practical builders and several expert architects. All of their testimony was to the effect that these iron beams or girders were unnecessary in a marble building, and that they would not expect, if they were contracting to build a marble building such as was finally constructed at Savannah, to be required to put these iron beams over the openings. The representative of the supervising architect's office, whose duty it was to visit this building and supervise its construction, testified that he considered these iron supports to be necessary and proper, and that, in his opinion, the building would not have been sufficiently strong without them. The acting supervising architect testified that, in his opinion, the structural steel and iron required to be put in the building was necessary to the stability of the building. From the evidence submitted the facts necessary to a determination of this case seem to be: (1) That the iron beams or girders over the openings in the walls of the building were clearly provided for in the specifications of the contract for the construction of the building of stone, brick, and terra cotta. (2) There was nothing whatever in the alternative proposal for the construction of a marble building as it was originally made, or in the contract sub-

sequently made for the erection of the marble building, between these contractors and the government, which eliminated these iron beams. (3) The iron beams would not have been usually required over openings in constructing a marble building in this section of the country, or perhaps generally. (4) The evidence does not show satisfactorily that these beams would not be required in a first-class building as erected by the United States government. On the contrary, some of the evidence shows, and it may, perhaps, be fairly treated as a matter of common knowledge, that buildings erected by the United States for public purposes, such as court houses and post offices, are of an unusually substantial character, and that an unusual factor of strength and safety is required in their construction.

## Conclusions of Law.

The question for determination here is, have the plaintiffs the right, under these facts, to recover for the cost of placing these iron beams in the building at Savannah? The plans for the stone, brick, and terra cotta building showed these iron beams, and there was no express agreement whatever, when the change to marble was made, that the beams would be left out. The plaintiffs claim that because they were not really necessary to the strength of the building, and would not usually be required in a building of that character, as testified to by builders and experts here, therefore they had the right to assume, in making their bid, that the beams would be left out. They claim that the expression, "including all necessary changes on account of said proposed substitution," in the clause from the specifications in the alternate marble bid, which has been quoted, justified them in expecting that such things as were not necessary when the change to marble was made would be left out of the building, and that they had the right to anticipate and to rely upon this in making their bid for the marble construction. It is clear that this stipulation as to "necessary changes" is for the benefit of the government; that is, the government required the contractors proposing to do this work to say that, if the change from stone, brick, and terra cotta to marble should be made, they would do the work in accordance with the details to be furnished, including all necessary changes which the representatives of the government might deem necessary. If the contract had stated, or if they had used language which would mean, that, if there should be a change from stone, brick, and terra cotta to marble, then the contractor would be entitled to have such changes as would make the construction of the building such as was usual and customary in a marble building, there might be some ground for the contention here made, but I am wholly unable to find anything like that in the language here used, or the connection in which it is used. The only possible ground for claiming extra compensation in this case is that the representatives of the government required an unusual, and possibly an extraordinary, factor of strength in the building; and this is not sufficient, in my opinion, to justify a recovery in view of the fact that these iron beams or girders appeared in the specifications for the stone, brick, and terra cotta building, and there was no stipulation whatever that they would be left out if and when the change to marble should be made. The govern-

ment should be held, of course, to fair compliance with contracts it enters into for government work, but only to this. And the contention that the representatives of the government engaged in supervising the construction of this building did not have the right to require these iron beams to be retained when the change in the character of construction was made would not be warranted by anything in the contract, or, in my opinion, by any just view of the law applicable to the case.

There are three general propositions of law set out in the interesting brief filed by counsel for the plaintiffs in this case. The first is that contracts made with the United States are controlled by the same general law that controls contracts between individuals; second, that, if there be doubt as to the meaning of a contract, the doubtful expression should be construed more strongly against the party who uses it in drawing up the contract; and, third, that, where doubtful or ambiguous language is contained in a contract, evidence of the usage or custom as to the matter embraced in the contract at the place where it is to be executed is admissible as forming a part of and entering into the contract. It is not necessary to gainsay any of these propositions. On the contrary, they may all be admitted without in any way interfering with the view heretofore expressed as to the merits of this controversy. Seeing these beams in the specifications for this building, for the contractors to assume that they would be taken out by the supervising architect's office when the change to marble was made because the contractors had not seen them before in marble construction, seems to me to have been unwarranted. On the contrary, it would appear that they were put upon fair inquiry, at least, before bidding, knowing these beams were a part of the construction, as to whether they would be retained when the change was made.

In my opinion, therefore, the plaintiffs are not entitled to recover in any view of the case, and judgment must be entered against the plaintiffs and in favor of the United States.